**Lester SMITH, Plaintiff,**

v.

**CITY OF PITTSBURGH, Defendant.**

Civ. A. No. 82–453.

United States District Court,
W.D. Pennsylvania,
Pittsburgh Division.

April 6, 1984.

---

Edward A. Olds, Pittsburgh, Pa., for plaintiff.

Richard J. Joyce, Asst. City Sol., City of Pittsburgh, Dept. of Law, Pittsburgh, Pa., for defendant.

## OPINION

SIMMONS, District Judge.

In this civil action a terminated city employee is seeking reinstatement and back pay from the City of Pittsburgh, claiming that the City's discharge violated his due process rights under the United States Constitution.

The salient facts in this case are undisputed. The plaintiff, Lester Smith, was originally employed by the City of Pittsburgh in its Department of Environmental Services under the Comprehensive Employment Training Act (CETA) program. Subsequently, Smith became a full-time City employee as a Refuse Helper and joined the Refuse and Salvage Drivers and Helpers Local Union Number 609. As a union employee, Smith's employment relationship with the City was governed by a collective bargaining agreement between the City and the Union. The labor contract pro-

vides that a member employee can only be discharged for "just cause."

On August 13, 1979, Smith was allegedly involved in an altercation with his supervisor for which he was immediately discharged. On that same day, the Assistant Director of Environmental Services drafted two memoranda which indicates that Smith was "terminated from his employment with [the] Department [of Environmental Services], effective August 13, 1979." [1]

Two days following Smith's discharge from employment he was summoned to a meeting at the office of the Director of Environmental Services. The meeting continued the following day. These meetings were described by the Director as step three grievance hearings in accordance with the grievance procedure set forth in the labor agreement. At the conclusion of the meetings, the Director concurred in the decision to terminate Smith and forwarded a letter to this effect to the Civil Service Commission.

Thereafter, Smith filed suit in this Court seeking reinstatement and back pay. Smith's complaint alleged two grounds for reinstatement. First, Smith challenged his termination as a wrongful discharge stemming from discriminatory conduct and harassment he alleged was condoned by the City. Second, Smith claimed that the discharge procedure the City used denied him due process of law.

Upon motion of the City, this Court dismissed Smith's discrimination claim because it lacked the specificity required for pleading civil rights violations in the Third Circuit. *See Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir.1976); *Negrich v. Hohn*, 379 F.2d 213 (3d Cir.1967). As to the due process claim, this Court held that, as a matter of law, Smith was entitled to a just cause hearing consonant with the dictates of due process before he could be properly discharged from his employment with the City. That is to say, before Smith could be irrevocably severed from his employment with the City he must have been given a pretermination hearing to determine the merits of the charges against him and whether the charges warranted his termination. *See Abraham v. Pekarski*, 728 F.2d 167 (3d Cir.1984); *Perri v. Aytch*, 724 F.2d 362 (3d Cir.1983). This Court therefore denied the City's motion to dismiss Smith's due process claim.

The parties have now filed cross-motions for summary judgment. In support of its motion, the City contends that the meetings it held two days following Smith's actual termination satisfied the minimum constitutional requirements of due process of law. The City argues that it dismissed Smith by the grievance procedures outlined in the collective bargaining agreement and that the grievance machinery provided in that agreement satisfies the due process requirements for a "just cause" termination. Smith disagrees.

The only remaining issue of law that need be resolved by this Court is whether Smith's post-termination hearing satisfied the minimum constitutional requirements of due process of law. To resolve this question, a two tier analysis is required. Admittedly, Smith was not given a pretermination hearing; however, a post-termination hearing was held two days after Smith's discharge. Thus, this Court must first decide whether the City's post-termination hearing cured the defect of not affording Smith a hearing prior to his dismissal, and then decide whether the procedural aspects of the City's post-termination hearing provided Smith with the minimum due process safeguards required by law.

---

1. Although the City contends that Smith's immediate supervisor had no actual authority to terminate him, it cannot be seriously contested that Smith's supervisor had been clothed with the apparent authority to discharge Smith and Smith subjectively believed that he had in fact been terminated. Furthermore, the overwhelming weight of the evidence conclusively establishes that Smith was in fact discharged prior to the City's termination hearing. Moreover, Article VIII of the collective bargaining agreement between the City and Smith's Union—upon which the City heavily relies in defense of its due process theory—contemplates that City employees may be discharged prior to a hearing, which is in fact what happened in Smith's case.

I.

The Supreme Court has uniformly held that "some kind of hearing is required at some time before a person is finally deprived of his property interests." *Wolff v. McDonnell*, 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935 (1974). A "person may have a protected property interest in public employment if contractual or statutory provisions guarantee continued employment absent 'sufficient cause' for discharge." *Arnett v. Kennedy*, 416 U.S. 134, 165, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1973), *citing, Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972).

■ In this case, Smith's property interest in employment was created by the collective bargaining agreement between Smith's Union and the City. On its face, the labor contract guarantees that member employees will not be terminated except for "just cause." The labor agreement thereby grants public employees an expectation interest in continued employment with the City. *See Abraham v. Pekarski*, 728 F.2d at 170 (3d Cir.1984) (city employee has "property interest in not being discharged except for good cause ....."); *Perri v. Aytch*, 724 F.2d at 365–366 (3d Cir. 1983) (probationary administrative court employee has property interest in not being discharged during probationary period, except for good cause).

■ The "formality and procedural requisites for [a due process] hearing can vary, depending upon the importance of the interest involved ....." *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). This case concerns a discharge hearing in the context of an employee's termination from public employment for "just cause." The process that was due Smith before he could properly suffer the loss of a protected property interest in employment is "a statement of the specific reasons for the dismissal and some form of hearing." *Perri*, 724 F.2d at 366, *citing, Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975).

■ The most "fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914). "It is an opportunity which must be granted at a meaningful time and in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Given the importance of a public employee's interest in continued employment, at minimum, an accused employee should be given the opportunity to contest the basis of his discharge and produce evidence in rebuttal.

■ Also essential to due process of law is the requirement of notice. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). As a prerequisite to a meaningful hearing, a public employee must be apprised of the specific charges against him so that he can adequately prepare his rebuttal. The notice must be calculated to reasonably inform the employee of the proposed adverse action and provide a reasonable period of time for filing an answer to the charges.

■ Of equal importance, the employee is entitled to have the merits of his discharge fairly judged. Thus, a due process hearing must be held before an impartial decision-maker, whose decision must rest upon the substantial weight of the evidence adduced. Although the nature of a due process hearing may vary depending on the importance of the interest at stake, that hearing must be held at a meaningful time. To this end, the Supreme Court has embraced a general presumption that one who is constitutionally entitled to a hearing should be heard *before* he suffers the deprivation of his property interest. *See generally Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

The opportunity to defend one's property interest *before* it is taken is so basic to

fundamental fairness that it hardly bears repeating. In *Perri* and *Abraham*, cases factually similar to the case *sub judice*, the Third Circuit has interpreted the Supreme Court's decisions in this area as requiring a due process hearing *"before"* a person is deprived of his property interest. *See Perri*, 724 F.2d at 366.

The *Perri* case involved a clerk-typist who was discharged during her probationary period with the Adult Probation Department of the Court of Common Pleas. Her termination followed an arrest on drug related charges that were later withdrawn by the district attorney's office. Perri was removed from her job without benefit of a hearing and sought reinstatement in federal court.

The Court Administrative Personnel Regulations guaranteed that a probationary employee would not be dismissed during the probationary period, except for just cause. The Third Circuit ruled that Perri was entitled to a statement of the specific reasons for her dismissal and some form of hearing before she could be deprived of her protected property interest in continued probationary employment. This pretermination hearing, the Court noted, is "to determine whether there is just cause for her dismissal." *Perri*, 724 F.2d at 367.

In the *Abraham* case a public employee was dismissed from his position as Director of Roads and Public Property by a majority faction of the Bristol Township Board of Commissioners. The majority faction had directed Abraham to withhold municipal services from the Township wards represented by members of the minority faction. Abraham refused and was discharged without a hearing.

At trial Abraham prevailed on the theory that his discharge was in retaliation for his refusal to join the majority political faction and that his due process rights were violated because he was discharged without a hearing. The Commissioners appealed the district court's denial of their judgment notwithstanding the verdict. As to the due process claim, the court of appeals ruled that the conceded fact that Abraham was discharged without a hearing is alone sufficient to support a verdict in his favor. The Third Circuit also noted that the trial court erred in requiring the jury to find that Abraham's discharge was not for "just cause." This ruling was erroneous, held the court, because "[a] post-termination judicial finding respecting an employment dismissal is not a substitute for a pre-termination hearing." *Abraham*, 728 F.2d at 170.

■ In this light, balancing the City's interest in expeditious removal of an employee against that of Smith's interest in continued employment, this Court holds that as a matter of law Smith was entitled to a due process hearing *before* his actual discharge. This is especially true where the charges against Smith might seriously damage his standing and association in his community or impose on him a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities. *See Perri*, 724 F.2d at 367, slip op. at 12, *citing, Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

Nothing in the record indicates that a pretermination hearing would have compromised the City's interest in employment efficiency or discipline. Nor is there evidence to suggest that a prior hearing would have imposed burdensome administrative cost, create unnecessary delay or deter a warranted discharge. While the prerogative to remove public employees for just cause and to do so with dispatch is a valid governmental interest, there is nothing in the record to support doing so in this case without benefit of a prior hearing to determine whether there was just cause for Smith's discharge.

■ On balance, this Court concludes that Smith's termination prior to some form of "just cause hearing" deprived Smith of a protected property interest in violation of due process of law. Moreover, the City's post-termination finding of just cause was not an adequate substitute for a pretermination due process hearing to de-

termine just cause. Nor did such a hearing cure the defect of the earlier due process violation. In this regard, it stands to reason that if due process requires a pretermination hearing, a post-termination hearing will not suffice; for the latter would make the former meaningless.

## II.

In addition to this Court's holding that the City's failure to provide Smith a pretermination hearing alone violated his due process rights, which was not cured by a post-termination hearing, this Court also holds that the procedural aspects of the City's post-termination hearing fell considerably short of the minimum procedural protection that due process requires.

 It is an undisputed fact that the City conducted some form of hearing two days after Smith's actual termination. The City asserts that the post-termination hearing was held in accordance with the procedural aspects of the collective bargaining agreement then in effect. To the extent that the City complied with the terms of the collective bargaining agreement, the City argues that due process requires no more. In essence, the City argues that the labor agreement defines what process Smith is due. This contention must be rejected as specious.

The majority members of the Supreme Court have agreed on the fundamental proposition that "[w]hile the State may define what is and what is not property, once having defined those rights the Constitution defines due process ...." *Arnett v. Kennedy*, 416 U.S. 134, 185, 94 S.Ct. 1633, 1660, 40 L.Ed.2d 15 (1974) (White, J., concurring in part and dissenting in part). *See also Perri*, 724 F.2d at 366; *Pedersen v. South Williamsport Area School District*, 677 F.2d 312, 316 (3d Cir.), *cert. denied*, 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982). Although the collective bargaining agreement conferred a property interest in continued employment upon Smith, this Court must look to federal law, not the labor agreement, to define Smith's procedural due process rights.

 As noted earlier, notice and a hearing are the quintessence of procedural due process. *Arnett*, 416 U.S. at 181, 94 S.Ct. at 1657. Under the notice requirement Smith was entitled to a statement of the specific reasons for his dismisal, *Perri*, 724 F.2d at 366, and a reasonable time to respond. Article VIII of the collective bargaining agreement governs the just cause discharge of a city employee. The agreement provides that the City shall notify the employee and his steward in writing within two days after the discharge of any employee and the reasons therefor. It also grants the discharged employee five days from the date of the discharge to file a written grievance. After the employee has filed his grievance in writing, the Department Supervisor shall convene a meeting within five days and answer the employee in writing within three days thereafter.

On its face the suspension and discharge clause of the labor contract runs afoul of the due process pretermination hearing requirement. Leaving this question aside, however, it is important to note that the City officials who discharged Smith not only failed to meet the constitutional requirements of notice, but also disregarded their own procedures for "just cause" terminations.

First, the labor agreement provides that the City will notify the employee of his discharge in writing within two days and the employee shall have five days to respond. Smith was terminated on August 13, 1979. This is clearly reflected in two memoranda prepared by the Assistant Director of Environmental Services. Although Smith's name is listed among those to receive a copy of the memoranda, Smith testified that he did not receive the memoranda until August 15, 1979, the date of the City's post-termination hearing. This fact is undisputed. In fact, the City concedes and even argues stringently that Smith did not receive a copy of the August 13, 1979, termination memoranda until the date of the hearing. In this vein, the City asserts that the memoranda were only drafted to

comply with the labor agreement and not to effectuate Smith's termination. Contrary to the clear language of the memoranda, the City advances this argument to establish that Smith was not terminated until some time after the August 15, 1979, hearing.

This argument misses the mark. What it does point out, however, is that prior to the City's post-termination hearing Smith was never given written notice of his discharge as required by due process and the terms of the labor agreement. Under the *Perri* decision Smith was entitled to a statement of the specific reasons for his dismissal. *Perri*, 724 F.2d at 366. Also, the labor contract provides that the City will notify an employee in writing within two days of his discharge. The record is abundantly clear that at no time prior to the August 15, 1979, meeting was Smith notified in writing that he was being discharged for the alleged altercation that occurred two days earlier.

Second, it is important to note, Smith was not given five days to respond to the charges in writing as required by the labor agreement. Smith was terminated on August 13, 1979. The post-termination hearing was held two days later. Assuming, arguendo, that Smith had received written notice on August 13, 1979, it is patently obvious that Smith was denied an adequate opportunity to prepare his response as required by due process and by the five-day period provided for in the labor agreement.

■ Even if this Court were to adopt the City's position that Smith was not in fact discharged until he received a letter from the Director terminating his employment on August 21, 1979, this Court would nevertheless be bound to conclude that the City's discharge procedures violated Smith's due process rights. This result is required because of the City's failure to follow the grievance procedure outlined in the labor agreement. In addition to the provisions previously discussed, the labor agreement provides that a discharge hearing shall begin at step two of the grievance procedure; the City started Smith's hear-

ing at step three of the procedure. The agreement provides that a written answer shall be given the employee within three days after the hearing; Smith did not receive his written response until five days after the hearing. In sum, were this Court to assume that the grievance machinery in the collective bargaining agreement met minimum due process requirements, this Court would still be constrained to hold in Smith's favor because the City ignored the procedural safeguards provided in that agreement.

■ On the basis of the record before this Court, Smith's termination by the City deprived him of the minimum procedural due process protection required by law. Viewing the record favorable to the City, on the undisputed facts, Smith is entitled to judgment as a matter of law. Therefore, it is the judgment of this Court that Smith be immediately reinstated until such time as the City provides him a specific statement of the reasons for his dismissal, adequate time to respond thereto and a termination hearing consistent with this opinion. Also, Smith is awarded back pay from the time of the due process violation, August 13, 1979, until his reinstatement. Smith shall be awarded an amount commensurate with the amount Smith would have received, including benefits and incremental raises, but for his wrongful discharge. Attorney fees are awarded to the prevailing party.

This Court finds inapposite the cases cited by the City which limits the amount of back pay awarded for due process violations to the period beginning with the violative discharge and ending after a curative, subsequent post-termination hearing was held. Smith's case is distinguishable because the City's post-termination hearing itself failed to pass constitutional muster. Judgment for the plaintiff, Lester Smith.