**James CURRY**

v.

**PENNSYLVANIA TURNPIKE COMMISSION, et al.**

No. 93–5358.

United States District Court, E.D. Pennsylvania, Civil Division.

Feb. 9, 1994.

---

Sidney L. Gold, Lovitz & Gold, Philadelphia, PA, for plaintiff.

Michael J. Ossip, Morgan, Lewis & Bockius, Philadelphia, PA, for defendants.

## MEMORANDUM

BARTLE, District Judge.

Plaintiff, James Curry, has brought this federal civil rights action, pursuant to 42 U.S.C. § 1983,[1] against the Pennsylvania Turnpike Commission ("Commission"), and individual members of the Commission.[2] Plaintiff was employed by the Commission as a fare collector. Sometime in early April, 1992, he was terminated for misappropriating funds. Curry claims that his discharge violated his due process rights under the Fourteenth Amendment to the Constitution.[3] Before the court is defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

■ To obtain summary judgment, the moving party must establish that no genuine issues of material fact remain in dispute. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party. A factual dispute is "material" if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In deciding whether the summary judgment standard has been met, the evidence must be viewed in the light most favorable to the non-moving party. *Mellon Bank Corp. v. First Union Real Estate Equity and Mortg. Invest.*, 951 F.2d 1399, 1404 (3d Cir. 1991).

■ Defendants contend that plaintiff had no property interest in his employment and therefore was not entitled to due process under the Constitution. Procedural due process requirements apply only when one is deprived of a property or other interest encompassed by the Fourteenth Amendment. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). To have a property interest in employment, an individual must have more than an abstract need or desire or unilateral expectation of the benefit. He must have a legitimate claim of entitlement to it. *Id.* Generally, such an entitlement to continued employment may arise from a statute, ordinance or contract. *See Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972); *Stana v. School Dist.*, 775 F.2d 122, 125 (3d Cir.1985). However, in all cases, state law governs the existence of a property interest. *Roth*, 408 U.S. at 577–78, 92 S.Ct. at 2709–10; *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Once a property interest is determined to exist, federal law governs the adequacy of the procedures employed to protect it. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

■ Plaintiff, a union member, alleges that his property right arises from a "just cause" provision in his collective bargaining agreement. Specifically, Article XXIV of the agreement provides in relevant part:

> Except as otherwise provided in this agreement, the Commission shall not discharge or discipline any employee without just cause.... In all cases involving the discharge or disciplinary action of an em-

1. 42 U.S.C. § 1983, provides in relevant part:

> Every person who, under color of any statute ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

2. All parties have entered into a stipulation, dismissing Counts I and II of the complaint which alleged state law causes of action, and Count I of the complaint with respect to plaintiff's claim for monetary damages. Plaintiff's claim for non-monetary injunctive relief against the individual defendants acting in their official capacities is the sole claim remaining the case.

3. The Fourteenth Amendment provides in relevant part:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law ...

ployee, the Commission shall notify the employee in writing of the reason for his discharge or discipline. Such written notice shall also be given to the appropriate job steward and a copy mailed to the Local Union Office within five (5) working days from the time of the discharge or disciplinary action.[4]

Defendants contend that under Pennsylvania law, a property interest in employment may only be created by legislative enactment and may not arise from a contract or collective bargaining agreement. They rely for this proposition on *Scott v. Philadelphia Parking Authority*, 402 Pa. 151, 166 A.2d 278 (1960). In *Scott*, plaintiff alleged that he was due money under a three year employment contract with the Philadelphia Parking Authority. The Pennsylvania Supreme Court found that the contract was invalid and unenforceable because the Authority lacked the power to enter into it. The court held that a public employer may not abrogate the general rule that public employees are employees at will without a legislative grant of authority to do so. *Id.*, 166 A.2d at 281. Subsequent Pennsylvania cases relying on *Scott* have held that a public employee does not have a property interest in continued employment unless the public employer had legislative authority to confer such an interest. *See Bolduc v. Board of Supervisors*, 152 Pa.Cmwlth. 248, 618 A.2d 1188 (1992); *Pagano v. Pennsylvania State Horse Racing Com.*, 50 Pa.Cmwlth. 499, 413 A.2d 44 (1980), *aff'd*, 499 Pa. 214, 452 A.2d 1015 (1982).

■ Where a grant of legislative authority exists, however, an employment contract may create a property interest. *See, e.g., Filice v. Dept. of Labor & Industry*, 155 Pa.Cmwlth. 347, 625 A.2d 148, 152 (1993); *Pennsylvania Social Services Union v. Dept. of Labor & Industry*, 105 Pa.Cmwlth. 264,

524 A.2d 1005, 1007 (1987). In this case, such a grant of authority can be found in the Public Employee Relations Act. ("PERA"), 43 Pa.Cons.Stat.Ann. § 1101.101, et seq., which authorizes and regulates collective bargaining between public employers and employees.[5] Specifically, § 1101.701 titled "Matters subject to bargaining," provides:

> Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employees to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession.

■ It is now well settled in Pennsylvania that the PERA authorizes public employers to enter into collective bargaining agreements containing "for-cause" provisions and other limitations on the ability to dismiss employees summarily. *See, e.g., Board of Education v. Philadelphia Federation of Teachers*, 464 Pa. 92, 346 A.2d 35 (1975); *Bolduc v. Board of Supervisors*, 152 Pa. Cmwlth. 248, 618 A.2d 1188 (1992). The Court of Appeals of this Circuit has suggested that a collective bargaining agreement may give rise to a property interest in employment under Pennsylvania law. In *Sanguigni v. Pittsburgh Board of Public Educ.*, 968 F.2d 393, 401 (3d Cir.1992), that Court affirmed the dismissal of plaintiff's due process claim because plaintiff had not alleged that her collective bargaining agreement contained a "for-cause" provision. The Court stated:

---

**4.** Article XXV of the agreement restates the proposition that no employee shall be discharged except for just cause, sets out a system of progressive warnings to be followed prior to discharge of an employee, and delineates specific offenses which result in immediate discharge without progressive warnings.

**5.** The term "public employer" means "the Commonwealth of Pennsylvania, its political subdivisions including school districts and any officer,

board, commission agency authority or other instrumentality thereof...."

The Pennsylvania Turnpike Commission, created by 36 Pa.Cons.Stat.Ann. § 652 et seq., is unquestionably an instrumentality of the Commonwealth. *Pennsylvania Turnpike Commission v. Fulton County*, 195 Pa.Super. 517, 171 A.2d 882 (1961). *Sarteschi v. Burlein*, 508 F.2d 110 (3d Cir.1975). It is therefore a "public employer" within the meaning of PERA.

Only two types of contracts have been found to be property protected by the Fourteenth Amendment. The first is a contract that confers a protected status, such as a tenure contract providing for permanent employment. The second is a contract explicitly providing that it may be terminated only for cause.

*See also Unger v. National Residents Matching Program,* 928 F.2d 1392, 1399 (3d Cir. 1991). *See also Smith v. Pittsburgh,* 585 F.Supp. 941, 945 (W.D.Pa.1984), *rev'd on other grounds,* 764 F.2d 188 (3d Cir.1985).

*Sasko v. Charleroi Area School District,* 121 Pa.Cmwlth. 220, 550 A.2d 296 (1988), relied on by the defendants, does not support the proposition that a collective bargaining agreement cannot create a property interest. To the contrary, in that case, the court assumed that such an interest could arise but found the agreement's specific language insufficient to create a property right. The contract did not hinge termination on a finding of just cause, but merely delineated procedures to be followed prior to termination. *Id.,* 550 A.2d at 299. In this case, the collective bargaining agreement at issue specifically states that an employee may not be discharged except "for cause." In light of the fact that such contract provisions are now legislatively authorized in Pennsylvania, this court finds that the Supreme Court of Pennsylvania would hold that the "for cause" provision in the collective bargaining agreement creates a constitutionally protected property interest in continued employment.

■■■ Defendants next contend that even if plaintiff has a property interest, the procedures afforded plaintiff prior to and following termination were constitutionally adequate. As stated above, once a property interest is found, federal law governs the procedures which must be followed prior to termination. *Loudermill,* 470 U.S. 532, 540, 105 S.Ct. 1487, 1492.[6] Due process requires that "some form of hearing" be held before an individual is deprived of a property interest. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495. However, a full evidentiary hearing is not required before an employee may be discharged. The Supreme Court in *Loudermill* explained that an employee with a property interest in his job is entitled to "a pretermination opportunity to respond, coupled with post-termination administrative procedures." 470 U.S. at 547, 105 S.Ct. at 1496. The pretermination hearing need not be elaborate. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. at 1495. Notice of the charges may be served at the time of the pretermination hearing. *Edmundson v. Borough of Kennett Square,* 4 F.3d 186 (3d Cir.1993); *Gniotek v. Philadelphia,* 808 F.2d 241, 244 (3d Cir. 1986), *cert. denied,* 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 839 (1987).

■■■ In this case, there are genuine issues of material fact with regard to the timing of the hearing allegedly afforded plaintiff. Defendants assert that a meeting was held on April 6, 1992, at which plaintiff was notified of the charges against him and given an opportunity to respond.[7] Plaintiff does not

---

**6.** Consequently, the fact that defendants may have followed all the procedures provided for in the collective bargaining agreement does not necessarily indicate that due process has been satisfied. *Loudermill,* 470 U.S. at 540, 105 S.Ct. at 1492.

**7.** In support of this proposition defendants point to a grievance report submitted by plaintiff to his union, in which plaintiff stated:

> On April 6, 1992, I appeared before 2 people from the Turnpike's Audit Dept. who stated I had not processed all of my work properly on March 1 and March 8, 1992. I was told that someone came through my lane on those dates and gave me a ticket from interchanges. That ticket did not show up in my work on either

day, nor did my money show an overage on either day. Having no way to settle my work on a daily basis, it is impossible to know what I should or should not turn in at the end of my shift in tickets and money. The person or persons who stated they came through my lane were not present at this meeting. . . .

Plaintiff also stated, "I was not the person who should have processed those tickets. I was terminated as of April 4, 2 days before having a chance to explain myself."

Defendants also submitted a letter from the Commission Assistant Counsel Albert Peters to the Secretary–Treasurer of plaintiff's union dated May 21, stating, that plaintiff "was terminated on April 6, 1992, after being charged with misappropriating funds," and that "grievant was confront-

dispute that the meeting occurred. However, plaintiff alleges that he was in fact terminated on April 4, 1992, two days before he was confronted with the charges against him. Although the complaint states that plaintiff was notified of the charges against him on April 3, 1992 and terminated on April 6, 1992, plaintiff's affidavit states that he was terminated on April 4, 1992. Furthermore, plaintiff has submitted a letter from the Commission dated April 13, 1992, which advises plaintiff that "[his] services as a Toll Collector with the Pennsylvania Turnpike Commissions were terminated at the close of business on April 4, 1992."

There is also a dispute about the propriety of the post termination administrative proceedings afforded plaintiff. The parties agree that a grievance hearing was held on April 12, 1992.[8] However, plaintiff asserts that the hearing was constitutionally infirm because the Commission's Assistant Counsel, Albert C. Peters, II, acted as both an advocate for the Commission and as a member of the panel which decided to deny plaintiff's grievance. Plaintiff asserts that such commingling of the prosecutorial and adjudicatory functions violated Curry's right to due process. Defendants contend that the proceeding complained of was merely an intermediate stage in the grievance procedure pursuant to the applicable collective bargaining agreement. According to defendants, plaintiff was entitled to take his grievance before a neutral arbitrator chosen by mutual consent of the parties but withdrew his claim before the hearing could be held. Defendants submitted a letter dated July 15, 1992 from the Secretary–Treasurer of plaintiff's union to the Deputy Chief Counsel of the Commission, which stated:

> A grievance may be withdrawn by the Union or the aggrieved employee at any time and the withdrawal of any grievance shall not be prejudicial to the positions taken by the parties as they relate to that grievance or any future grievance.

Therefore, we wish to withdraw this grievance.

This letter does not indicate whether the grievance was withdrawn at the request of plaintiff or by the union without the approval of the plaintiff. Under *Loudermill*, plaintiff was entitled to both an informal pre-termination hearing and post-termination administrative proceedings. Because there exist genuine issues of material fact with respect to these proceedings, defendants' motion for summary judgment will be denied.

---

ed with the charges on April 6, 1992 and Grievant denied that he misappropriated the money."

**8.** The collective bargaining agreement provides for a four-step grievance procedure. The April 12 hearing constituted a step-three proceeding under the agreement. With regard to step-three hearings the agreement provides at Article XXVI:

> If the Union is not satisfied with the disposition of the grievance at Step 2, it may submit a written appeal to the Commissioners or their designee within ten (10) work days after re-

ceiving a decision at the second step. The Commissioners or their designee, within ten (10) working days following the hearing, shall give the employee and Union a written decision. If the Union does not proceed with the grievance to the fourth step within the time limit prescribed in the following subsection and no extension of time is mutually agreed upon, the grievance shall be considered to be satisfactorily resolved.