**Lucille SARTESCHI, Appellant**

v.

**Lester F. BURLEIN, Chairman, Pennsylvania Turnpike Commission, et al.**

**No. 74–1316.**

United States Court of Appeals, Third Circuit.

Argued Nov. 12, 1974.

Decided Jan. 6, 1975.

John R. Anderson, Pittsburgh, Pa., for appellant.

Thomas J. Dempsey, Pittsburgh, Pa., for appellees.

Before VAN DUSEN, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

The plaintiff brought this civil rights action to challenge her discharge from the employ of the defendants, present and former members and employees of the Pennsylvania Turnpike Commission; from the district court's January 23, 1974, jurisdictional dismissal the plaintiff has filed a timely appeal.

It appears from the plaintiff's August 17, 1973, complaint that she was employed as an "Officer-Collector" from October 9, 1968, until December 30, 1969. She contends that her discharge was in retaliation for her supporting the Team-

sters Union's efforts to organize employees of the Commission and that such retaliation constituted an interference under color of state law both with her freedoms of speech and association and with her "rights to notice and an impartial hearing before discharging her from public employment." Plaintiff also alleges that most of the employees discharged during the Teamsters' organizing campaign were rehired during the 1970 gubernatorial campaign, but that she was not solely because she supported the then candidate Shapp instead of the incumbents; this reinstatement decision is alleged to have deprived her of "the right to participate in the electoral process and to openly support the candidate of her choice." The plaintiff prays damages, both compensatory and punitive, and reinstatement with seniority. On October 9, 1973,[1] the defendants filed a motion to dismiss.

On January 23, 1974, the district court granted the defendants' motion on the ground " that the above-styled cause is in substance a suit against said Commission for wrongful discharge and that appropriate relief, if merited, would require official action by said Commission, such as reinstatement, back pay, and the like; and the Court being of the opinion that it is an arguable question whether said Commission is a 'municipality' or is a 'person' suable under 42 U.S.C. 1983." The dismissal was granted "without prejudice . . . to the filing of a similar action against the said Turnpike Commission, in which the suability or immunity of said Commission may be directly decided." We have decided that the January 23, 1974, order of the district court is inconsistent with the decisions both of this Circuit and of the Supreme Court regarding civil rights actions against state officials, and we therefore reverse.

The Fourteenth Amendment to the United States Constitution prohibits states from depriving "any person of life, liberty, or property, without due process of law;" and from denying "to any person within [their] jurisdiction[s] the equal protection of the laws." The due process clause has been interpreted to protect the freedoms of speech and association against state interference. See, *e. g.*, Edwards v. South Carolina, 372 U.S. 229, 235, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Whitney v. California, 274 U.S. 357, 373, 47 S.Ct. 641, 71 L.Ed. 1095 (1927) (Brandeis, J., concurring); Gitlow v. New York, 268 U.S. 652, 666, 45 S.Ct. 625, 69 L.Ed. 1138 (1925). Congress has given the federal courts jurisdiction over civil actions which concern alleged state violations of the Fourteenth Amendment rights. 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983, relied on by the plaintiff, provide:

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; . . . ." 28 U.S.C. § 1343(3)

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

The Eleventh Amendment to the Constitution provides:

"The Judicial power of the United States shall not be construed to extend

---

1. By order entered September 10, 1973, the district court extended the time for the defendants "to file and serve" responsive pleadings or motions to October 5, 1973. Although the defendants' motion to dismiss was not filed until October 9, 1973, it was served on the plaintiff on October 5, 1973.

to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Eleventh Amendment has been interpreted to prohibit suits against a state by its own citizens, as well. See Edelman v. Jordan, 415 U.S. 651, 662–663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The Supreme Court has accommodated both the Eleventh Amendment and the civil rights provisions, such as 42 U.S.C. § 1983, by prohibiting suits which seek to collect money judgments from the state treasury, while allowing suits which either seek personal money judgments against state officials as damages for unconstitutional deprivations or seek prospective injunctive relief from unconstitutional deprivations taken under color of state law. Compare Edelman v. Jordan, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974) ("equitable restitution" of public aid amounts unconstitutionally withheld from the intended beneficiaries, which "is in practical effect indistinguishable in many aspects from an award of damages against the State," is barred by the Eleventh Amendment) with Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (suit to collect money damages from the Governor of the State of Ohio, the Adjutant-General of the Ohio National Guard and his Assistant, various officers and enlisted members of the Ohio National Guard, and the president of Kent State University, for deploy-

ment of National Guard forces in a manner which deprived the plaintiffs of due process of law, not barred by Eleventh Amendment); Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (suit to enjoin state official's enforcement of a rate-setting statute claimed to be in violation of the United States Constitution not barred by the Eleventh Amendment). The theory of Ex parte Young is stated as follows:

"If the act which the state Attorney General seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." Id. at 159–160, 28 S.Ct. at 454.

■ Under the foregoing precedents, the plaintiff's complaint cannot be dismissed for the reasons stated by the district court.[2] The plaintiff does not seek damages from the state treasury, but only from those named defendants who were members or employees of the Commission at the time of her discharge.[3] The fact that the allegedly unconstitutional acts of the defendants were done in the defendants' official capacities, and that the relief sought would require official action on the part of those defendants who are still members or employees of the Commission, does not affect the district court's jurisdiction.[4] See, e. g., Griffin v. School Board, 377 U.S. 218,

---

**2.** There appears to be no doubt in this case that the defendants' actions were "under color of state law" for purposes of § 1983; the defendants' position is the converse, that there was such profound state coloration as to give rise to the Eleventh Amendment's sovereign immunity. We are not suggesting that the Commission is entitled to the immunity discussed in *Edelman*, as this issue is not before us. See Goode v. Rizzo, 506 F.2d 542, p. 550 (3rd Cir., 1974); Skehan v. Board of Trustees, etc., 501 F.2d 31, 41–43 (3d Cir. 1974).

**3.** Although the district court's January 23, 1974, order appears to assume that appropri-

ate relief would include the payment of back pay by the Commission, the plaintiff's complaint seeks monetary damages only from the individual, named defendants. Plaintiff's Complaint, Prayer for Relief, 2.

**4.** Although the complaint should not have been dismissed, the fact that the alleged unconstitutional actions were taken by the defendants in their official capacities may open certain defenses. See Scheuer v. Rhodes, 416 U.S. 232, 238–250, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); Fidtler v. Rundle, 497 F.2d 794 (3d Cir. 1974); Gordenstein v. University of Delaware, 381 F.Supp. 718, 727–728 (D.Del.1974).

232–234, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964) (ordering, *inter alia*, defendants to operate certain public schools which had been closed in an effort to frustrate desegregation); Rochester v. White, 503 F.2d 263 (3d Cir. 1974).

 Cohn and Kassab, the two defendants who were not members or employees of the Commission at the time of the plaintiffs' discharge, deserve a special caveat. The plaintiff argues that it is customary to substitute successors in office for named defendants, citing F.R. Civ.P. 25(d) and such examples of the practice as Sostre v. McGinnis, 442 F.2d 178, 181–182 n. 1 (2d Cir. 1971), and Sims v. Amos, 336 F.Supp. 924, 932 n. 9 (M.D. Ala.) (three judge court), aff'd, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972). While a substitution of successors in office is procedurally sound, to obtain injunctive relief against the successor there must be some indication that the successor would otherwise continue the unconstitutional practices alleged in the complaint. Mayor of the City of Philadelphia v. Educational Equality League, 415 U.S. 605, 622–623, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974); Spomer v. Littleton, 414 U.S. 514, 520–523, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974). On the plaintiff's version of the facts, she has not been rehired because she supported Milton Shapp's campaign for Governor. Cohn and Kassab were appointed by Governor Shapp himself. Plaintiff's Complaint at par. 32. These allegations cause us seriously to question whether Cohn and Kassab will oppose the plaintiff's appointment on the ground that she was a supporter of Shapp. But, despite these doubts raised by the complaint, we do not believe that we can affirm the district court's dismissal as to Cohn and Kassab. The complaint avers that the plaintiff still has not been rehired, and that Cohen and Kassab, together with their brethren on the Commission, are responsible for this continuing constitutional deprivation. This is enough for the complaint not to be dismissed as to Cohn and Kassab on the pleadings alone.[5] Should later development of the facts reveal, however, that defendants Cohn and Kassab support the plaintiff's appointment, or oppose it for reasons which are constitutionally permissible, it would be appropriate, upon proper motion by defendants, to enter judgment in favor of Cohn and Kassab.[6]

 Although we find that the complaint is sufficient to invoke the district court's jurisdiction as to all defendants, we do not mean to suggest any conclusion as to whether the plaintiff is entitled to relief. The federal courts have traditionally been hesitant to interfere with the appointment of state employees. In Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), the Court said:

> "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."

This language was recently affirmed in Arnett v. Kennedy, 416 U.S. 134, 151, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (plurality

---

**5.** The plaintiff might, for example, prove that Cohen and Kassab believe that the Commission should have absolute freedom to fire employees in retaliation for the employees' political opinions, and oppose the plaintiff's reinstatement in order to protect such imagined power. If this were the case, injunctive relief against them may be appropriate. See pp. 114–115, *infra*.

**6.** Of course, the same reasoning applies to other defendants as well: if a development of the facts reveals that the plaintiff has not been reinstated for reasons entirely unrelated to her political affiliations, judgment in favor of all defendants will be appropriate.

We note also that dismissal of the complaint against Cohn and Kassab would not impair the district court's ability to grant the plaintiff relief. Since three of the five members of the Commission constitute a quorum, 36 P.S. § 652d (1961), an order directed only to defendants Burlein, Bollinger and Meehan could effect the plaintiff's reinstatement.

opinion). See also Sampson v. Murray, 415 U.S. 61, 69–71, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). Although the plaintiff's complaint alleges at paragraph 36 that the defendants' actions "deprived Plaintiff of her rights to notice and an impartial hearing before discharging her from public employment," a right to such notice and hearing must be shown to exist as a matter of state law or custom before the Fourteenth Amendment can be invoked to protect such a notice or hearing.[7] See Board of Regents v. Roth, *supra* at 576–578. On the other hand, state authorities have been prevented from exercising their discretion over hiring and firing in a manner which unnecessarily interferes with the employees' First Amendment rights. See, *e. g.*, Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Alderman v. Philadelphia Housing Authority, 496 F.2d 164 (3d Cir. 1974). The Supreme Court has stated the relevant inquiry as follows:

> "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."

Pickering v. Board of Education, *supra*, 391 U.S. at 568, 88 S.Ct. at 1735.

*Cf.* Arnett v. Kennedy, *supra*, 416 U.S. at 158–163, 94 S.Ct. at 1648 (removal "[for] such cause as will promote the efficiency of the service" is not so vague and overbroad as to chill protected First Amendment expression). See generally The Supreme Court, 1972 Term, 87 Harv. L.Rev. 55, 141–153 (1973). Which interest—the plaintiff's in exercising her First Amendment rights, or the government's, in limiting such exercise—is the weightier is a question which must await resolution by the district court after it has determined the facts involved in the case.

Accordingly, the district court's dismissal as to all the defendants will be reversed and the case will be remanded to the district court for further proceedings.

---

**7.** The Court in Sampson v. Murray, *supra*, also endorsed the position of several late 18th and early 19th Century cases that, absent a specific provision to the contrary, the power of removal from federal office is incident to the power of appointment. 415 U.S. at 70, n. 17, 94 S.Ct. 937. The Commission is given the power to employ "experts and inspectors and attorneys, and such other employes as may be necessary in its judgment." 36 P.S. § 652d (1961). To prove her claim that a lack of notice and hearing violated due process, the plaintiff would have to call to the district court's attention some other provision or custom which would limit the power conferred by § 652d by requiring a notice and hearing before discharge.

The appellees rely on Dorsey v. N.A.A.C.P., 408 F.2d 1022 (5th Cir. 1969), and Charters v. Shaffer, 181 F.2d 764 (3d Cir. 1950), for the proposition that 42 U.S.C. § 1983, which refers only to federally created rights, does not protect a state employee's rights, if any, to reinstatement. These cases are inapposite because the plaintiff in the case before us claims that the state failed to follow the proper procedure for dismissal. Once a state creates the expectation of such procedures before discharge, a procedural due process right arises to protect that expectation. See Board of Regents v. Roth, *supra*.