**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2876
_____

SEBASTIAN RICHARDSON,
                                                              Appellant

v.

DIRECTOR FEDERAL BUREAU OF PRISONS;
BRYAN A. BLEDSOE;  DAVID YOUNG, Associate
Warden at USP Lewisburg;  DONALD C. HUDSON,
JR., Associate Warden; CAPTAIN BRADLEY TRATE;
SEAN SNIDER, Deputy Captain; LT. JAMES
FLEMING; LT. PEDRO CARRASQUILLO;  LT.
CHRIS MATTINGLY; LT. MATTHEW SAYLOR; LT.
AARON SASSAMAN;  LT. JASON SEEBA; ROGER
MILLER; LT. THOMAS JOHNSON; LT. CAMDEN
SCAMPONE;  LT. KYLE WHITTAKER
_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 3-11-cv-02266
District Judge: The Honorable William J. Nealon, Junior

Argued May 17, 2016

Before: SMITH, HARDIMAN, and NYGAARD, *Circuit Judges*

(Filed: July 15, 2016)

Alexandra Morgan-Kurtz        [ARGUED]
Pennsylvania Institutional Law Project
429 Forbes Avenue
Suite 800
Pittsburgh, PA  15219

Su Ming Yeh, Esq.
Pennsylvania Institutional Law Project
718 Arch Street
Suite 304S
Philadelphia, PA  19106
        *Counsel for Appellant*

Michael J. Butler                [ARGUED]
Office of United States Attorney
228 Walnut Street,
P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA  17108
        *Counsel for Appellee*

---

OPINION

---

SMITH, *Circuit Judge.*

Plaintiff Sebastian Richardson, a former inmate at the United States Penitentiary at Lewisburg, is seeking both individual monetary damages for alleged violations of his constitutional rights at USP Lewisburg and class-wide injunctive relief to prevent future constitutional violations at the penitentiary. While the procedural history of this case is complex, we are presented with a single issue on appeal. We must determine whether Richardson's class-wide claims for injunctive relief are moot because Richardson was transferred out of USP Lewisburg after he filed an amended class action complaint but before he moved for class certification.

We conclude that Richardson's class claims are not moot. As we have previously held, when individual claims for relief are acutely susceptible to mootness, a would-be class representative may, in some circumstances, continue to seek class certification after losing his personal stake in the case. Additionally, even though Richardson never filed a motion for class certification, we hold that the class certification issue was clearly presented to the District Court both in

Defendants' motion to dismiss Richardson's amended class complaint and in Richardson's response to that motion. Richardson's claims, therefore, relate back to the date on which he filed his amended class action complaint. Accordingly, he may continue to seek class certification in this case. We will therefore remand this case to the District Court for further proceedings consistent with this opinion.

I.

Sebastian Richardson arrived at USP Lewisburg in March 2010 and was immediately placed in the Special Management Unit program (SMU program). The SMU program was created to house inmates with special security concerns, namely individuals with past histories of violence and individuals who "participated in or had leadership roles in geographical groups/gang related activity." U.S. Dep't of Justice, *Program Statement: Special Management Units*, P5217.01, § 1 (Nov. 19, 2008), available at https://www.bop.gov/policy/progstat/5217_001.pdf. Upon entering the SMU program, inmates are interviewed to determine their "separation needs and known enemies" so that they are not placed with incompatible individuals. *Richardson v. Kane*, No. 3:CV-11-2266, 2013 WL 1452962, at *2 (M.D. Pa. Apr. 9, 2013). Once in the program, inmates are rotated between cells every twenty-one days, sometimes receiving new cellmates as they rotate. *Id.*

4

Richardson's amended complaint alleges that through a "pattern, practice or policy," Pl.'s Am. Compl. 2, ECF No. 21, officials at USP Lewisburg frequently placed inmates in cells with hostile cellmates, unnecessarily increasing the risk of inmate-on-inmate violence. *Id.* at 10-11. He further alleges that if an inmate refused to accept a hostile cellmate, he would be placed in painful restraints as a form of punishment. *Id.* at 12. Richardson claims that he was subjected to this policy and that it violated his Fifth and Eighth Amendment rights.

In support of this claim, Richardson explains how—after seven months of living with a compatible cellmate—corrections staff asked him to "cuff up" on the cell door so that a new inmate could be transferred into his cell. *Id.* at 19. Richardson alleges that this inmate, known among the prison population as "the Prophet," had attacked over twenty former cellmates. *Id.* Richardson refused to "cuff up" because he did not want to be placed with "the Prophet." Corrections staff then asked if Richardson was refusing his new cellmate, and he replied that he was. *Id.* After taking "the Prophet" away, corrections staff returned thirty minutes later with a Use of Force team and asked Richardson if he would submit to the use of restraints. Richardson complied. *Id.*

Richardson was then taken down to a laundry room where he was stripped, dressed in paper clothes, and put in "hard" restraints. *Id.* at 20. Next, he was

5

locked in a cell with another prisoner (who was also in hard restraints) and left there for three days before being transferred yet again. *Id.* All told, Richardson alleges that he was held in hard restraints for nearly a month, was forced to sleep on the floor for much of that time, and frequently was refused both showers and bathroom breaks. Richardson also claims that there have been at least 272 reports of inmate-on-inmate violence at USP Lewisburg between January 2008 and July 2011 and that dozens of other inmates have suffered treatment similar to his as a result of this unwritten practice or policy. *Id.* at 10.

While still in the SMU program at USP Lewisburg, Richardson brought suit against a number of prison officials alleging that this unwritten policy violated his constitutional rights. Richardson's amended complaint seeks individual monetary damages and class-wide injunctive relief for "[a]ll persons who are currently or will be imprisoned in the SMU program at USP Lewisburg." *Id.* at 33.

Richardson's amended complaint notes that he is seeking class certification under Federal Rule of Civil Procedure 23(b)(2), which generally provides for only injunctive relief.[1] It also explains why such relief should

---

[1] We need not weigh in on "whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2)," because Richardson has

6

be granted and discusses the specific Rule 23 factors courts must consider when determining whether to certify a class. *Id.* at 41-44. The District Court, however, found Richardson's class definition "untenable because it [wa]s not objectively, reasonably ascertainable." *Kane*, 2013 WL 1452962, at *4. Certification was therefore denied. While this did not prevent Richardson from pursuing his individual claims for damages against the Defendants, the District Court eventually stayed Richardson's case in its entirety pending this Court's resolution of *Shelton v. Bledsoe*, 775 F.3d 554 (3d Cir. 2015). In *Shelton*, we granted a motion for interlocutory appeal of the same issue that was decided by the District Court here: the ascertainability of an identically defined class of prisoners at USP Lewisburg. We held that ascertainability is not required for Rule 23(b)(2) classes and therefore remanded the case to the District Court to "consider whether the properly-defined putative class meets the remaining Rule 23 requirements for class certification." *Id.* at 565.

After we decided *Shelton*, Richardson sought leave to appeal the District Court's denial of class certification in his case. A motions panel of this Court granted the request. This case, then, raises substantive issues nearly

---

not sought such incidental monetary relief in this case. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366 (2011).

identical to those we considered in *Shelton*. Indeed, Richardson argues that *Shelton* controls our decision in this case and that we should reverse the District Court's order denying class certification and remand for further proceedings consistent with *Shelton*.

Defendants disagree. While they admit that *Shelton* would control the outcome of Richardson's class action claims, they argue that these claims have become moot for two reasons. First, they argue that because Richardson's *individual* claims for injunctive relief are moot, he cannot represent a *class* seeking the same injunctive relief. Specifically, because Richardson was not housed in the SMU when the District Court denied class certification, they argue that he does "not have standing to represent a class of USP Lewisburg inmates housed in the SMU." Appellees' Br. 10. Second, Defendants note that all the individuals Richardson named as defendants have since retired or changed jobs. Defendants argue that this moots Richardson's claims for injunctive relief because they read the amended complaint to allege harms resulting only from conduct that is personal to the individual defendants (as opposed to conduct that is systematic and institutional in nature). Accordingly, Defendants assert that Richardson's claims for injunctive relief are moot under *Spomer v. Littleton*, 414 U.S. 514 (1974), as there is no reason to believe the allegedly unconstitutional conduct will continue under

8

the new prison administration. Appellees' Br. 11. We address these two arguments in turn.[2]

## II.

Defendants argue that Richardson's class action claims are moot because Richardson failed to move for class certification before he was transferred out of USP Lewisburg. While Richardson, of course, still has standing to seek damages for any *past* constitutional violations that occurred while he was housed in the SMU program at USP Lewisburg, he must have separate standing for forward-looking, *injunctive* relief. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought."). To determine whether Richardson has standing to seek injunctive relief, we ask whether he can "show that he is likely to suffer future injury from the defendant's conduct." *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (internal quotation marks and citations omitted). Typically, "[i]n the class action context, [this] requirement must be satisfied by at least one named plaintiff." *Id.* While it is clear that

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1292(e) as a result of Richardson's petition for interlocutory appeal under Federal Rule of Civil Procedure 23, which was granted on July 30, 2015.

9

Richardson *had* standing to seek injunctive relief when he filed his amended complaint (as he was still housed in the SMU program at USP Lewisburg), we must ask whether his claims for injunctive relief are now moot because he is no longer housed there.[3]  Generally speaking, a case will become moot "when . . . the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (internal citations and quotation marks omitted). Mootness jurisprudence characterizes this as "the personal stake requirement." *Id.*

The Supreme Court in *Geraghty*, however, noted that Article III mootness is more "flexible" than other justiciability requirements, especially in the context of class action litigation.  *Id.* at 400.  Indeed, we have recognized that "[i]n the class action context, special mootness rules apply" for determining at what point in time a named plaintiff must still have a personal stake in the litigation to continue seeking to represent a putative class action. *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 343 (3d Cir. 2003).

These special mootness rules have evolved over time to allow a plaintiff to continue seeking class certification in certain circumstances even though his

---

[3] Richardson was transferred out of USP Lewisburg on September 10, 2012, a mere six weeks after he filed his amended complaint.

10

individual claim for relief has become moot. One such special rule is commonly referred to as the "relation back doctrine." *See Sosna v. Iowa*, 419 U.S. 393, 402 n.11 (1975) ("[W]hether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review."). This doctrine permits courts to relate a would-be class representative's (now moot) claim for relief back in time to a point at which that plaintiff still had a personal stake in the outcome of the litigation. The plaintiff can thus continue to represent, or seek to represent, a class of similarly situated persons despite no longer having a justiciable claim for *individual* relief. *See Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) ("'[T]he termination of a class representative's claim does not moot the claims of the unnamed members of the class.'" (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975))).

For example, courts have often recognized that the relation back doctrine applies to claims that are "inherently transitory" or "capable of repetition yet evading review." *See McLaughlin*, 500 U.S. at 46; *Geraghty*, 445 U.S. at 398-99; *N.J. Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 31 (3d Cir. 1985). Such cases can still be heard in federal court even if the named plaintiff's claims have become moot during the litigation. Here, however, we consider a different

application of the relation back doctrine: the picking off exception to mootness.

A.

In *Weiss v. Regal Collections*, we held that when a plaintiff's individual claim for relief is "acutely susceptible to mootness" by the actions of a defendant, that plaintiff may continue to represent the class he is seeking to certify even if his individual claim has been mooted by actions of the defendant. 385 F.3d 337, 347-48 (3d Cir. 2004). This has colloquially been termed the "picking off" exception to mootness. *See Wilson v. Gordon*, __ F.3d __, 2016 WL 2957155, at *9 (6th Cir. May 23, 2016). Because *Weiss* (the only case in this Circuit to recognize the picking off exception) was partially overruled by the Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), we find it necessary to reexamine the basis for this exception to determine whether this holding in *Weiss* is still good law. We will therefore trace the development of the picking off exception and explain why we conclude that it has survived *Campbell-Ewald*.

We find one of the first invocations of the picking off exception in *White v. Mathews*, 559 F.2d 852, 857 (2d Cir. 1977). Here, plaintiff George White alleged that the Social Security Administration delayed processing numerous disability claims in violation of the Social Security Act. However, because the Administration had

12

processed White's claim while his class certification motion was pending, the court had to determine whether the mooting of his individual claim mooted the entire class action. *Id.* The court first recognized that if it did not relate White's claim back to the date on which he sought class certification, the Social Security Administration "could avoid judicial scrutiny of its procedures by the simple expedient of granting hearings to plaintiffs who seek, but have not yet obtained, class certification." *Id.* While *White* did "not suggest that this occurred here," it explained that it must take into account "the 'reality' of that possibility in the future." *Id.* Accordingly, the court held that White's claim could relate back to the date he sought class certification, thus preventing mootness. *Id.*

Of note, *White* also recognized that the district court could have ruled on the motion to certify more quickly if it "had been concerned about mootness." *Id.* But it also concluded that "a district court should have enough time to consider these important issues of class status carefully, particularly when no purpose would be served by rushing a ruling." *Id.* This timing issue will be discussed in more detail below.

While *White* first recognized the logic of the picking off exception, it was not until the following year that this exception was expanded to permit relation back—not just to the date of the *motion* for class certification, but to the date of the class *complaint*. In

13

*Blankenship v. Secretary of HEW*, all the named plaintiffs received complete relief (in the form of expedited review of their disability claims) before they moved for class certification. 587 F.2d 329, 333 (6th Cir. 1978). This, the defendants argued, mooted the entire class action. The Sixth Circuit disagreed. It recognized that the plaintiffs' claims

> epitomize[d] the type of claim which continually evades review if [they are] declared moot merely because the defendants have voluntarily ceased the illegal practice complained of in the particular instance. Thus, the defendants may expedite processing for any plaintiffs named in a suit while continuing to allow long delays with respect to all other applicants.

*Id.* The court was concerned by the use of these tactics because they seemed to give the defendants the ability to exploit a loophole that would, in some cases, prevent class certification indefinitely. As *Blankenship* recognized, if defendants were allowed to "pick off" would-be class representatives, the defendants might be able to ensure "that no remedy could ever be provided for continuing abuses." *Id.* Every time someone filed a complaint and sought class status, the defendants could, as they did in *Blankenship*, expedite review of that plaintiff's disability claim and prevent that person from

14

becoming a class representative. *Id.* Requiring such piecemeal litigation would undermine the very purpose of class action litigation. Thus, *Blankenship* held that even if the would-be class representative's claim became moot, "the class members retain[ed] a live interest in th[e] case so that the class action should not be declared moot, and the class certification should 'relate back' to the date of the filing of the complaint." *Id.*

Two years later, the Supreme Court acknowledged this same practical concern and recognized that "[t]o deny the right to appeal simply because the defendant has sought to 'buy off' the individual private claims of the named plaintiffs would be contrary to sound judicial administration." *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980). In *Roper*, however, the Supreme Court did not have to decide whether the relation back doctrine could be used to relate a claim back to the date on which a plaintiff filed a class complaint, as opposed to the class certification motion, because the named plaintiff's claim became moot only after the denial of class certification was appealed. Thus, the Court held only that the named plaintiff's loss of a personal stake in the litigation *while appealing the class certification issue* did not prevent him from continuing to seek to represent the class. That being said, for the reasons discussed below, we agree with the Sixth Circuit that there is "no distinction between picking off a named plaintiff when a motion for class certification has been

15

filed and is then pending and picking off a named plaintiff after the motion for class certification has been denied." *Wilson*, __ F.3d at __, 2016 WL 2957155, at \*10. In other words, while the Supreme Court's holding in *Roper* is limited in scope, we believe its logic extends more broadly.

Indeed, just a year after *Roper* was decided, the Fifth Circuit came to the same conclusion. The court held that the picking off exception permits application of the relation back doctrine even when the District Court has not yet ruled on the issue of class certification:

> By tendering to the named plaintiffs the full amount of their personal claims each time suit is brought as a class action, the defendants can in each successive case moot the named plaintiffs' claims before a decision on certification is reached. A series of individual suits, each brought by a new named plaintiff, could individually be "picked off" before class certification; as a practical matter, therefore, a decision on class certification could, by tender to successive named plaintiffs, be made . . . difficult to procure . . . .

*Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1050 (5th Cir. 1981). In support of this position, the court cited several cases that "have considered the effect

of a defendant governmental agency's voluntary performance of a specific action demanded in the lawsuit." *Id.* at 1051. It concluded that "[i]n each of these cases the court has held that the defendant could not prevent a decision on the plaintiff's motion for certification by rendering the individual plaintiff's demand for injunctive relief moot before the court has reasonably been able to consider the motion." *Id.* The above cases thus highlight the development of and rationale for the picking off exception to mootness.

All this brings us back to *Weiss*. We held in *Weiss* that a would-be class representative can continue to seek class certification even after losing his personal stake in the litigation if the claims raised are "acutely susceptible to mootness." 385 F.3d at 347 (internal citations omitted). We also held that this picking off exception to mootness would permit us to relate a claim for relief back to the date the would-be class representative filed his class action complaint, not just to the date of the class certification decision (as the Supreme Court did in *Roper*). *Id.* at 348.

Indeed, *Weiss* noted that while "most of the cases applying the relation back doctrine have done so after a motion to certify has been filed[,] . . . reference to the bright line event of the filing of the class certification motion may not be well-founded." *Id.* at 347 (internal citations and quotation marks omitted). We explained that a bright line rule was not consistent with the general

17

principle that "the class action process should be able to 'play out' according to the directives of Rule 23 and should permit due deliberation by the parties and the court on the class certification issues." *Id.* at 348. That being said, *Weiss* also recognized that the picking off exception was still limited. For example, *Weiss* explained that relation back is not appropriate if the plaintiff "undu[ly] delay[s]" raising the issue of class certification. *Id.*

A brief discussion of the facts in *Weiss* helps make the reasoning behind this approach clear. Richard Weiss filed suit against Regal Collections on behalf of himself and a putative nationwide class of similarly situated individuals alleging that Regal Collections' debt collection practices violated the Fair Debt Collections Practices Act (FDCPA). *Id.* at 339. Weiss sought monetary, declaratory, and injunctive relief. *Id.* at 339-41. In response, and a mere "six weeks after plaintiff filed his amended complaint," *id.* at 348 n.18, Regal Collections made a Rule 68 offer to Weiss in the amount of $1000 plus attorney fees, the full amount available under the FDCPA. *Id.* at 339-40. This offer came before Weiss had moved for class certification, and did not provide for any injunctive, declaratory, or class-wide relief. Recognizing that class action mootness principles may not always track those of individual claims for relief, *Weiss* held that Regal Collections' Rule 68 offer mooted Weiss's *individual* claim for relief, but further

18

held that this did not prevent Weiss from continuing to seek class certification as a would-be class representative. In other words, Weiss's loss of a personal stake in the litigation did not moot the case.

We concluded that if Regal Collections' offer of relief to Weiss could moot the entire class action, "it would encourage a race to pay off named plaintiffs very early in the litigation, before they file motions for class certification." *Id.* at 348 n.19 (internal quotation marks and citations omitted). This would "encourage premature certification decisions," *id.* at 347, and undermine the import of Rule 23(c)(1)(a), which now states that certification decisions should be made "at an early practicable time," Fed. R. Civ. P. 23(c)(1)(a), instead of "as soon as practicable after commencement of an action." *Id.* advisory committee notes to 2003 amendment. This change reflects the view of the Advisory Committee that there are "many valid reasons that may justify deferring the initial certification decision." *Id.*

Twelve years after *Weiss*, the Supreme Court took up an issue that had been bedeviling courts across the country: whether an unaccepted Rule 68 offer could moot an individual plaintiff's claim for relief. As mentioned above, we held in *Weiss* that a Rule 68 offer did moot the individual claim for relief, but we also held that the would-be class representative still had an interest in seeking class certification and thus the case was not

19

moot. The Supreme Court, however, disagreed with our first holding, and instead explained that "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case . . . ." *Campbell-Ewald*, 136 S. Ct. at 672. This meant that someone in Weiss's position still had a personal stake in the outcome of the litigation even though he was offered complete relief under Rule 68. The Supreme Court, therefore, did not need to reach the arguably more difficult question: whether a named plaintiff who did in fact lack a personal stake in the outcome of the litigation could continue to seek class certification even though his claim became moot before filing a motion for class certification.

Accordingly, as we have already recognized, "*Campbell-Ewald* overrules our previous holding in *Weiss* that '[a]n offer of complete relief will generally moot the plaintiff's claim, as at that point the plaintiff retains no personal interest in the outcome of the litigation.'" *Weitzner v. Sanofi Pasteur, Inc.*, 819 F.3d 61, 64 (3d Cir. 2016) (quoting *Weiss*, 385 F.3d at 340). However, *Campbell-Ewald* did not address the picking off exception. Doing so was clearly unnecessary under *Campbell-Ewald*'s logic. Accordingly, we do not read *Campbell-Ewald* to overrule *Weiss*'s holding regarding the picking off exception to mootness.

Nor do we read *Campbell-Ewald* to answer the question posed in this case. Richardson's *individual* claim for injunctive relief is still moot. Richardson was

20

transferred out of USP Lewisburg before he filed *any* documents other than his amended class action complaint. Because of this transfer, Richardson's personal stake in the claims for injunctive relief was extinguished.[4] We therefore will apply the picking off exception just as we did in *Weiss* to determine whether Richardson may continue to represent the class of

---

[4] Richardson has not carried his burden of showing that he fits into either the "capable of repetition yet evading review" or the "inherently transitory" exceptions to mootness. Specifically, Richardson has not shown that he has a reasonable expectation of being placed in the SMU Program again in the future, nor has he shown that the amount of time an inmate spends in the SMU Program is typically so brief as to evade review by becoming moot before a District Court can rule on class certification. *Cf. Jersey Cent. Power & Light*, 772 F.2d at 31 ("Thus, a matter is not necessarily moot simply because the order attacked has expired; if the underlying dispute between the parties is one 'capable of repetition, yet evading review,' it remains a justiciable controversy within the meaning of Article III."); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 981 (3d Cir. 1992) ("Some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." (citing *Geraghty*, 445 U.S. at 399)).

inmates still being held in the SMU Program at USP Lewisburg despite the mootness of his individual claim.[5]

Next, we briefly analyze a few post-*Weiss* cases which further support the continued use of the picking off exception and help to clarify its scope. Specifically, we look at when this doctrine should apply by considering what constitutes a reasonable amount of time within which it would be expected that a plaintiff should have moved for class certification. We also consider a few additional arguments that have been made more recently in support of the picking off exception. This will help us to determine *infra* whether and how the exception should apply in this case.

While *Campbell-Ewald*, as mentioned above, does not actually address the picking off exception, we see in it some support for the principles animating the exception in the Court's discussion of class action standing. Specifically, the Court noted that while a class does not become an independent entity until certification, "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." 136 S. Ct. at 672. This

---

[5] Crucially, in doing so we must still determine whether Richardson "undu[ly] delay[ed]" presenting the issue of class certification to the District Court—a requirement the plaintiff satisfied in *Weiss*. *Weiss*, 385 F.3d at 348. That issue is discussed in Part B below.

statement seems to suggest a corollary: when a would-be class representative is *not* given a "fair opportunity" to show that certification is warranted (perhaps because her individual claim became moot before she could reasonably have been expected to file for class certification), she should be permitted to continue seeking class certification for some period of time after her claim has become moot.

Without this "fair opportunity," there would be, as we explained in *Weiss*, a race between the plaintiff and the defendant to see who could act first—the plaintiff in moving for class certification or the defendant in mooting the claims of would-be class representatives. Such a race would often thwart proper factual development of class action claims and thus prevent courts from fully and fairly assessing the merits of class certification. *Cf. Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972) ("To pronounce finally, prior to allowing any discovery, the non-existence of a class or set of subclasses, when their existence may depend on information wholly within defendants' ken, seems precipitate and contrary to the pragmatic spirit of Rule 23.").

Indeed, we have seen this exact problem arising in district courts across the country. Plaintiffs increasingly file so-called "placeholder" motions for class certification solely to prevent defendants from mooting the claims of would-be class representatives. *See, e.g., Wasvary v. WB Holdings, LLC*, No. 15-10750, 2015 WL

5161370, at *3 (E.D. Mich. Sept. 2, 2015); *Church v. Accretive Health, Inc.*, 299 F.R.D. 676, 679 (S.D. Ala. 2014); *Beaudry v. Telecheck Servs., Inc.*, No. 3:07-CV-0842, 2010 WL 2901781, at *2 (M.D. Tenn. July 20, 2010).  These placeholder motions "come[] with a cost," as, they

> burden[] the Court with an obviously premature motion that is devoid of content and the motion remains on the Court's docket as pending, which is reflected on the Court's reports for an unspecified period of time.  *See* [*Church v. Accretive Health, Inc.*, 299 F.R.D. 676,] 2014 U.S. Dist. LEXIS 56939 at *3 ("Plaintiff's straight-out-of-the-chute Rule 23 Motion is highly unlikely to advance her cause one iota, but is virtually certain to impose administrative costs, unnecessary distractions, and an unhelpful drag on efficiency and judicial economy.").

*Dickerson v. Lab. Corp. of Am.*, No. 8:14-cv-1390-T-30TBM, 2014 U.S. Dist. LEXIS 100323 (M.D. Fla. July 23, 2014).  Our ruling today is intended to have the salutary effect of discouraging these premature motions in favor of motions brought within a reasonable period of time and after proper factual development of the claims has occurred.  This is so because a plaintiff, by waiting until it would be appropriate to seek class certification,

24

does not run the risk of having the entire class action mooted in the interim.

Indeed, *Weiss* has already had this beneficial effect in some of the district courts in this Circuit. *See Smith v. Interline Brands, Inc.*, 87 F. Supp. 3d 701, 701-03 (D.N.J. 2014) (denying a premature motion for class certification and explaining that after *Weiss*, waiting to seek class certification until the facts are fully developed will not expose the would-be class representative to a premature mootness challenge). *Smith* also noted that our approach in *Weiss* "is a sensible recognition of the undesirability of a premature motion for class certification, unsupported by discovery and largely untethered to the requirements for actually certifying a class." *Id.* at 703. We could not agree more.[6]

---

[6] In the Middle District of Pennsylvania, where this case was filed, Local Rule 23.3 requires the filing of a motion for class certification within ninety days of the complaint. While neither side raised arguments concerning this rule on appeal, we take this occasion to note that a strict time limitation like the one imposed by Local Rule 23.3 "may be inconsistent with Rule 23(c)(1)(A)'s emphasis on the parties' obligation to present the court with sufficient information to support an informed decision on certification. Parties need sufficient time to develop an adequate record." Ann. Manual Complex Lit. § 21.133 (4th ed.). Further, Local Rule 23.3 may conflict with this

25

Other circuits have recently been moving in this same direction. In *Pitts v. Terrible Herbst, Inc.*, for example, the Ninth Circuit concluded that the relation back doctrine should be extended to situations in which a defendant could "'buy off' the small individual claims of the named plaintiffs," 653 F.3d 1081, 1091 (9th Cir. 2011), because such claims are "acutely susceptible to mootness." *Id.* (quoting *Weiss*, 385 F.3d at 347). If such an exception to mootness were not adopted, *Pitts* explained, "[i]t would effectively ensure that claims that are too economically insignificant to be brought on their own would never have their day in court." *Id.* at 1091. The effect would be to broadly undermine the purpose of Rule 23 and class action litigation. *Cf. Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 384, 386 (S.D. Ohio 2008) ("[T]reating pre-certification settlement offers as mooting the named plaintiffs' claims would have the disastrous effect of enabling defendants to essentially opt-out of Rule 23." (internal quotation marks and citation omitted)). The court in *Pitts* therefore held that a named plaintiff's claim could relate back to the date of filing the class action complaint. 653 F.3d at 1092.

---

Court's recognition—as reflected in the change to Federal Rule of Civil Procedure Rule 23(c)(1)(A)—that class certification questions should not be hastily raised or resolved.

26

The Eleventh Circuit has also taken this approach. In *Stein v. Buccaneers Ltd. Partnership*, the court recognized that it was bound by *Zeidman* (the Fifth Circuit's[7] 1981 opinion adopting the picking off exception) and held that the picking off exception to mootness should apply when defendants are able "'effectively to prevent any plaintiff in the class from procuring a decision on class certification.'" 772 F.3d 698, 706 (11th Cir. 2014) (quoting *Zeidman*, 651 F.2d at 1050).

*Stein* also concluded that "nothing . . . suggests the relation-back doctrine turns on whether the named party's individual claims become moot before or after the plaintiffs move to certify a class. Quite the contrary." *Id.* at 707. *Stein* then explained that in class action litigation, in no way does "the filing of a certification *motion*, rather than the entry of a certification *order*, affect[] legal rights." *Id.* at 708. Indeed, *Stein* further held that the motion itself "does nothing significant" and merely "indicates that the named plaintiff intends to represent a class if allowed to so do," something that a class action complaint also does. *Id.* at 707. Thus, it is erroneous for courts to conclude that the filing of the

_____

[7] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

class certification motion somehow "fundamentally changes the legal landscape" of the case. *Id.*

*Stein* instead concluded that the focus should be on whether "the named plaintiff acts diligently to pursue the class claims." *Id.* What constitutes "diligence" in each case may vary, but *Stein* concluded that it was sufficient to simply state that if a plaintiff "acts without undue delay" seeking class certification, relation back is permissible. *Id.* And because it concluded that the filing of the class certification motion should lack legal significance, *Stein* held that when the relation back doctrine applies, "certification relates back not to the filing of the motion to certify but to the filing of the complaint." *Id.* (internal citations omitted).

The Tenth Circuit has similarly held that the relation back doctrine may be applied to relate a now-moot individual claim back to the date of the class action complaint. In *Lucero v. Bureau of Collection Recovery, Inc.*, the court adopted a narrow formulation of this rule, holding that when "satisfaction of the plaintiff's individual claim [occurs] before the court can reasonably be expected to rule on the class certification motion," the plaintiff's stake in the litigation is not extinguished. 639 F.3d 1239, 1250 (10th Cir. 2011). Indeed, *Lucero* adopted reasoning similar to that in *Stein* when it explained that "[w]e find no authority on which to distinguish the case in which a class certification motion is pending or filed within the duration of the offer of

judgment from our case [in which no motion has yet been filed]: any Article III interest a class may or may not have in a case is or is not present from its inception." *Id.* at 1250.

Based primarily on *Weiss*, but also upon consideration of the well-reasoned approaches of our sister circuits, we reaffirm the validity of the picking off exception. When an individual plaintiff's claim for relief is acutely susceptible to mootness and it is clear from the complaint that the plaintiff is seeking to represent a class, we may relate such a claim back to the date of the filing of the class complaint.

That said, our holding should not be read to give plaintiffs a free pass to delay the determination of class status. As *Lucero* noted, this mootness exception should apply only in situations where the mooting of the individual claim "occurred at so early a point in litigation that the named plaintiff could not have been expected to file a class certification motion." 639 F.3d at 1249 (internal quotation marks and citations omitted). If, on the other hand, "the plaintiff had ample time to file the class certification motion," this exception should not apply and "courts [should] adhere to the general rule that the mooting of named plaintiff's claim prior to class certification moots the entire case." *Id.* (internal quotation marks and citations omitted).

29

## B.

We now address whether the mooting of Richardson's individual claim occurred "at so early a point in litigation" that his failure to file a motion for class certification was not unreasonable. *Id.* In making this determination, we are mindful of two separate but related considerations. *Weiss* explained that plaintiffs cannot "undu[ly] delay" seeking class certification, 385 F.3d at 348, while *Campbell-Ewald* suggested that plaintiffs must still have a "fair opportunity" to seek class certification, 136 S. Ct. at 672.

## i.

We begin by considering whether Richardson was given a fair opportunity to present the issue of class certification to the District Court before he was transferred out of the SMU program. Fortunately, for purposes of this case, we need not determine the outer bounds of what might constitute a "fair opportunity" to seek class certification because the facts of this case make it clear that Richardson was not given such an opportunity. [8] Richardson was transferred out of USP

---

[8] The Court of Appeals for the Tenth Circuit grappled with what might constitute the outer bounds of a "fair opportunity" in *Clark v. State Farm*, explaining that "when the defendant makes a full offer of judgement—thereby mooting the named plaintiff's claims—at so early

Lewisburg's SMU program a mere six weeks after he filed his amended complaint; this is much shorter than the 90 days allowed by Local Rule 23.3 (which may itself, as we explained in the margin, be too short), and is the same amount of time Weiss was given to seek certification before his claim was mooted.[9]  Thus,

---

a point in the litigation that the named plaintiff could not have been expected to file a class certification motion, the class's claims are not moot and the case may proceed. But where the plaintiff has had ample time to file the class certification motion, district courts adhere to the general rule that the mooting of a named plaintiff's claim prior to class certification moots the entire case." *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1139 (10th Cir. 2009).  In *Clark*, however, the court did not need to decide whether it would adopt our approach in *Weiss*.  It held that even under *Weiss*, Clark's claim would be moot as he delayed seeking class certification for two years after the case was remanded to the district court.

[9] In *Weiss*, we held that the plaintiff had not unduly delayed seeking class certification because his claim was mooted a mere six weeks after he filed his complaint. 385 F.3d at 348 n.18.  As discussed further in this Part, the corollary of this conclusion is that Weiss had not exhausted his fair opportunity to seek class certification in the six weeks he had been given.

whatever the outer bounds may be, it is clear that if a defendant acts to moot a would-be class representative's claim within six weeks of the filing of a class action complaint, that plaintiff did not have a fair opportunity to present his case for class certification to the District Court. We will accordingly relate his claim back to the date on which the amended class complaint was filed. *Weiss*, 385 F.3d at 348.

ii.

We take care to note that the concept of a "fair opportunity" is bounded by the admonition from *Weiss* mentioned above: that a plaintiff must present the issue of class certification to the District Court without "undue delay." *Id.* Such delay would prevent relation back to the date of the complaint. *Id.*

The contours of this undue delay standard have yet to be fleshed out. In *Weiss*, as mentioned earlier, the would-be class representative only had six weeks to move for class certification. By holding that there was no undue delay, we implicitly suggested that there had also not been a fair opportunity to seek class certification before the case became moot and thus instructed the trial court on remand to permit Weiss to file a motion for class certification. *Id.*

This concept of undue delay was also discussed by the Fifth Circuit under similar circumstances in *Sandoz v.*

32

*Cingular Wireless LLC*,  553 F.3d 913 (5th Cir. 2008). Sandoz filed a class action complaint against Cingular Wireless in state court.  Twenty-four days after the case was removed to federal court, Cingular made a Rule 68 offer of judgment and then sought to dismiss the case for lack of subject matter jurisdiction.  The district court concluded that the Rule 68 offer did not moot the entire case and denied the motion to dismiss.  The case was taken up on interlocutory appeal, and the Fifth Circuit concluded that application of the relation back doctrine was appropriate.  Unlike the situation in *Weiss*, however, "Sandoz did not file her motion to certify until thirteen months after she filed her complaint, and relation back is warranted only when the plaintiff files for certification 'without undue delay.'"  *Id.* at 921 (quoting *Weiss*, 385 F.3d at 348).  The court therefore concluded that "[o]n remand, the district court must determine, under these unique facts, whether Sandoz timely sought certification of her collective action.  If she did, then her motion relates back to the filing of her initial state court petition." *Id.*[10]

---

[10] On remand, the district court held that "[i]n sum, between the time defendants answered the petition and made their offer of judgment, the litigation has been embroiled in the single issue of whether defendants' offer of judgment mooted the plaintiff's claim and/or mooted the entire litigation.  After that issue was preliminarily

Unfortunately, applying this "undue delay" analysis to the facts of our case presents an added challenge. Typically, when determining whether the plaintiff has unduly delayed, we measure the time between the filing of the complaint (or amended complaint) and the filing of the motion for class certification. Richardson, however, *never* filed a motion for class certification. We hold that that is of no moment here. His failure to file a motion for class certification does not prevent relation back because the issue was clearly presented to the District Court without undue delay.

Two weeks after Richardson filed his amended complaint, Defendants filed a motion to dismiss the entire case. In this motion, Defendants argued, among other things, that Richardson could not meet the four requirements for class certification listed in Rule 23(a). Defs. Mot. to Dismiss 26, ECF No. 28. Richardson responded to this motion one month later, reiterating the arguments he made earlier in his amended complaint regarding class certification and explaining why the

resolved by this court, prior to appeal, plaintiff timely filed her motion for certification as instructed by the District Judge. Under these circumstances, it would be a miscarriage of justice to conclude that plaintiff's motion for class certification was filed untimely." *Sandoz*, 2009 WL 2370643, at *4.

34

proposed class meets all the requirements of Rule 23(a). Pl.'s Resp. to Defs. Mot. to Dismiss 29, ECF No. 33. Defendants' motion and Richardson's response thus put the issue of class certification squarely before the District Court.[11] There was no need for Plaintiff to file a separate motion seeking class certification. Richardson's amended complaint made it clear that he was seeking certification under Rule 23(b)(2) and Defendants' motion to dismiss recognized that fact. Indeed, the District Court concluded that the issue of class certification was properly presented—a determination to which we give substantial deference—because it considered and denied class certification based only on the class action complaint, Defendants' motion to dismiss, and Richardson's response.[12]

---

[11] Although Richardson had yet to file a written motion for class certification, the record reveals curious references which Defendants' have failed to explain. Specifically, their motion to dismiss mentioned a nonexistent "motion" by Richardson for class certification at least twice. Defs. Mot. to Dismiss 25, 32, ECF No. 28.

[12] The District Court cited the amended complaint when it stated that Richardson had moved for class certification pursuant to Rule 23. *Kane*, 2013 WL 1452962, at *1. While the amended complaint did explain that Richardson sought to represent a class of similarly situated individuals and asked for class certification in its

35

We agree that, ordinarily, the "proper procedure is for the named representative to file a motion for class certification." *Weiss*, 385 F.3d at 348. Yet the absence of a motion should not necessarily be fatal. Accordingly, we join the courts of appeals which have held that "[n]othing in the plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class certification issue before the district court or prohibits a defendant from seeking early resolution of the class certification question." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009); *see also Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). We embrace the view that "[t]he only requirement [in Rule 23(c)(1)(A)] is that the certification question be resolved '[a]t an early practicable time.'" *Vinole*, 571 F.3d at 940 (quoting Rule 23(c)(1)(A)). There is no per se rule that a plaintiff must move for class certification before the issue can be considered by the District Court. However, "[t]o say that a defendant may freely move for resolution of the class-

prayer for relief, it did not by itself constitute, nor did it include, a motion for class certification. Richardson too recognized that he had yet to file a motion for class certification when he later explained that he was waiting to file the motion until his earlier motion to consolidate his case with *Shelton* was considered. Pl.'s Resp. to Defs. Mot. to Dismiss 28, ECF No. 33.

36

certification question whenever it wishes does not free the district court from the duty of engaging in a rigorous analysis of the question . . . ." *Pilgrim*, 660 F.3d at 949 (internal quotation marks omitted). Indeed, "a court should typically await the development of a factual record before determining whether the case should move forward on a representative basis." *Manning*, 725 F.3d at 59.

We also believe that permitting either party to raise the issue of class certification strikes the proper balance between permitting prompt and efficient judicial resolution of cases in which "we cannot see how discovery or for that matter more time would have helped" the named plaintiff, *Pilgrim*, 660 F.3d at 949, and ensuring that district courts allow for the factual development that is often necessary to determine the propriety of class certification. Because a district court must have the freedom to balance these interests, we conclude that a per se rule requiring the plaintiff to move for certification is improper.

Applying these principles to this case, it is clear that even though Richardson never filed a motion to certify the class, certification was still squarely presented to and properly considered by the District Court.[13] Both

---

[13] We also note that the District Court applied the proper standard in evaluating the certification question even though the motion was styled as a motion to dismiss. As

37

sides briefed the issue and explained why they believed the class should or should not be certified. And again, as discussed above, the argument that the mere filing of a motion for class certification somehow alters the "legal landscape" of the case "makes no sense" when it is already clear from the complaint alone that the plaintiff is seeking such relief. *Stein*, 772 F.3d at 707. We therefore hold that the District Court did not err in considering the merits of class certification absent an affirmative motion by Richardson.

For purposes of determining undue delay, we can thus read Defendants' motion to dismiss and Richardson's response as sufficiently presenting the issue of class certification to the District Court. Because the issue was both raised by Defendants and responded to by Richardson within seven weeks of the filing of the amended complaint, we cannot conclude that Richardson

---

we have held before, "the Rule 23 requirements differ in kind from legal rulings under Rule 12(b)(6)." *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 303 (3d Cir. 2010) (internal citations and quotation marks omitted). A motion to dismiss tests the legal sufficiency of a claim, but "[b]y contrast, an order certifying a class usually is the district judge's last word on the subject; there is no later test of the decision's factual premises." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

unduly delayed presenting the issue of class certification to the District Court even though he never filed a motion for class certification.

iii.

Our analysis can be summed up as follows. First, Richardson did not have a "fair opportunity" to seek class certification before his individual claim became moot because Defendants transferred Richardson out of the SMU Program six weeks after he filed his amended class action complaint. In other words, he could not be expected to have presented the class certification issue to the District Court within that amount of time. Second, because the class certification question was both raised by Defendants and responded to by Richardson within seven weeks of the filing of the amended class complaint, we excuse Richardson's failure to file a motion for class certification as the issue was squarely presented to the District Court without undue delay. Accordingly, under *Weiss*, we can relate the District Court's denial of class certification back to the date of Richardson's amended class complaint.[14] Because Richardson's individual

---

[14] We are not presented with a situation in which *no* class members, named or otherwise, currently have standing to seek relief in this case. Defendants have not alleged that the SMU program at Lewisburg has been shut down. We must therefore assume that the program is still active and

39

claims for injunctive relief were live at the time he filed this complaint, the subsequent mooting of these claims does not prevent Richardson from continuing to seek class certification or from serving as the class representative.[15]

### III.

Defendants also argue that this case is moot because the prison officials Richardson seeks to enjoin are no longer employed at USP Lewisburg. Defendants thus attempt to analogize this case to *Spomer v. Littleton*, arguing that Richardson has not alleged that the supposedly unconstitutional practices at USP Lewisburg would continue under a new administration. 414 U.S. at 520-21. Defendants are correct that, in light of *Spomer*, Richardson had to plead more than a mere "personal" grievance against individuals at the prison in order to avoid the mooting of his claims for injunctive relief. Richardson instead had to allege that his grievances were

that unnamed class members still have live claims to assert.

[15] On remand, therefore, the District Court may consider the additional class certification requirements that it did not previously reach when it erroneously concluded that the class was unascertainable. It may also reconsider whether consolidation with *Shelton* is appropriate. In making these determinations, the District Court may order supplemental briefing as it sees fit.

systematic, pervasive, or institutional and thus likely to continue under a new prison administration. Our review shows that Richardson has made sufficient allegations that—at least at the motion to dismiss stage—will prevent a mootness determination under *Spomer*.

As we have previously explained, even when "a substitution of successors in office is procedurally sound, to obtain injunctive relief against the successor there must be some indication that the successor would otherwise continue the unconstitutional practices alleged in the complaint." *Sarteschi v. Burlein*, 508 F.2d 110, 114 (3d Cir. 1975). In other words, the question we must ask under *Spomer* and *Sarteschi* is "whether the alleged violation is personal to the departed official or whether it reflects a continuing state practice." *Peck v. McDaniel*, No. 2:12-cv-01495, 2014 WL 6747115, at \*5 (D. Nev. Dec 1, 2014).

This approach is also supported by the commentary to Federal Rule of Civil Procedure 25(d),[16]

---

[16] Federal Rule of Civil Procedure 25(d) states in relevant part:

which permits such substitutions. Specifically, the Advisory Committee explains that "[i]n general [Rule 25(d)] will apply whenever effective relief would call for corrective behavior by the one then having official status and power, rather than one who has lost that status and power through ceasing to hold office." Fed. R. Civ. P. 25 advisory committee notes to 1937 adoption. If a practice is ongoing and "institutional," the relevant defendant is the one who has the power to stop it.

In this case, Defendants argue that because the unconstitutional actions alleged in the amended complaint are characterized as being *in violation of* BOP policy, the conduct must be personal to Defendants. They argue that "Richardson's amended complaint is devoid of any allegation that the current Director of the Bureau of Prisons, the Warden of USP Lewisburg, and his new associate wardens would violate inmates' constitutional rights by blatantly disregarding prison

---

An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.

42

policy and subjecting inmates to harm." Appellees' Br. 23. In response, Richardson argues that "*Spomer* is inapplicable to the case at bar as Mr. Richardson's allegations do not relate to the personal conduct of the named defendants, but rather to facts concerning institutional practices and policies." Appellant's Reply Br. 15.

While Richardson does allege that conduct at issue violated BOP policy, this does not necessarily mean that the conduct was idiosyncratic or limited to the personal hostility of a particular individual. Instead, the amended complaint alleges that there was an unspoken practice or procedure of retribution in the prison, which is more akin to an "institutional practice," as the Ninth Circuit determined in *Hoptowit v. Spellman*. 753 F.2d 779, 782 (9th Cir. 1985) (concluding that the claims did "not relate to the personal conduct of the principal named defendants" but "concern[ed] institutional practices and physical conditions at the penitentiary").

In particular, right from the beginning of his amended complaint, Richardson asserts that the injuries here are the result of a "pattern, practice, or policy," and then refers to the constitutional violations he is alleging as "systematic failure[s]" at USP Lewisburg. Pl.'s Am. Compl. 2, 3. We, of course, take no position on whether Richardson can succeed in showing that this practice has in fact continued under the new prison administration. We simply hold that "[t]his is enough for the complaint

not to be dismissed," and caution just as we did in *Sarteschi* that—should future developments in this case show that the alleged abuses are in fact no longer occurring at USP Lewisburg—"it would be appropriate, upon proper motion by defendants, to enter judgment in favor of [Defendants]." 508 F.2d at 114.

## IV.

For the foregoing reasons, we will vacate the District Court's order dismissing Richardson's class claims and remand for further proceedings consistent with this opinion.